# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **CRYPTON LLC**<br>a Michigan Limited Liability Company,<br><br>**Plaintiff,**<br><br>v.<br><br>**WILLIAMS-SONOMA, INC.**<br>a Delaware Corporation,<br><br>**Defendant.** | **Case No.** _____<br><br><br>**JURY DEMAND** |

## COMPLAINT AND JURY DEMAND
## INJUCTIVE RELIEF DEMANDED

Plaintiff Crypton LLC by its undersigned counsel, Brooks Kushman P.C., files this Complaint against Defendant Williams-Sonoma, Inc., and alleges as follows:

## I.  THE PARTIES

1. Plaintiff, Crypton LLC ("Crypton"), is a limited liability company organized under the laws of the state of Michigan with a principal place of business at 38500 Woodward Avenue, Suite 201, Bloomfield Hills, Michigan 48304.

2. Defendant, Williams-Sonoma, Inc. ("WS"), is a corporation organized under the laws of the state of Delaware with a principal place of business at 3250 Van Ness Avenue, San Francisco, California 94109.

## II.  JURISDICTION AND VENUE

3. The federal claims pleaded herein arise under the Lanham Act, 15 U.S.C. § 1051 *et seq*.

4. Original federal subject matter jurisdiction for the federal claims pleaded herein is conferred upon the Court by 15 U.S.C. § 1121, 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) in that this case arises under the trademark laws of the United States.

5. Pursuant to 28 U.S.C. § 1332(a)(3), this Court also has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000,

exclusive of interest and costs, and is between business entities organized under the laws of different states and having principal places of business in different states.

6. The state law claims pleaded herein arise under the laws of the State of Michigan, including MCL § 429.42 and the Michigan Consumer Protection Act ("MCPA").

7. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) ("substantial and related claim of unfair competition") and 28 U.S.C. § 1367 ("other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

8. This Court has personal jurisdiction over WS because WS conducts business both in the State of Michigan and in this District and has performed acts complained of in this District or which have a direct effect in this District. WS has advertised, marketed, and sold furniture with treated fabrics in its Pottery Barn stores with the CRYPTON Trademarks (as defined below) without authorization for at least two years. WS's Pottery Barn treated fabrics and furniture are marketed, sold, and distributed nationwide, including both in the State of Michigan and in this District. Product samples of WS's Pottery Barn treated fabrics having the CRYPTON Trademarks are currently available in a Pottery Barn store in Troy, Michigan, which is in this District.

### III.     CRYPTON'S BUSINESS AND TRADEMARKS

9. Crypton is a worldwide supplier of treated textile products, which include moisture-resistant fabrics and other treatment chemistries. Crypton sells liquid and stain resistant fabrics, and treatment chemistries used in the manufacture of furniture, upholstery, and other coverings.

10. Crypton is the owner of U.S. Trademark Reg. No. 1,927,329 ("the '329 registration") for the mark "CRYPTON" ("the '329 CRYPTON mark") in connection with "liquid and stain resistant, antimicrobial, printed fabric for use in the manufacture of umbrellas, rain gear, tents, tarpaulins, awnings, clothing, aprons, upholstery, tablecloths, wall coverings, and covers for boats and vehicles" in International Class 24. This registration issued October 17, 1995 and is incontestable, valid, subsisting, uncancelled, and unrevoked. A copy of the registration certificate is attached hereto as Exhibit A.

11. Crypton has continuously used the '329 CRYPTON mark in the United States to distinguish its goods in connection with liquid and stain resistant, antimicrobial, printed fabric for use in the manufacture of umbrellas, rain gear, tents, tarpaulins, awnings, clothing, aprons, upholstery, tablecloths, wall coverings, and covers for boats and vehicles since at least as early as 1993.

12. Crypton is the owner of U.S. Trademark Reg. No. 3,173,354 ("the '354 registration") for the mark "CRYPTON" ("the '354 CRYPTON mark") in

3

connection with "liquid and stain resistant fabrics for manufacturing clothing, furniture and automobile upholstery" in International Class 24. This registration issued November 21, 2006 and is incontestable, valid, subsisting, uncancelled, and unrevoked. A copy of the registration certificate is attached hereto as Exhibit B.

13. Crypton has continuously used the '354 CRYPTON mark in the United States to distinguish its goods in connection with liquid and stain resistant fabrics for manufacturing clothing, furniture and automobile upholstery since at least as early as 1997.

14. Crypton is the owner of U.S. Trademark Reg. No. 4,306,040 ("the '040 registration") for the mark "CRYPTON HOME" ("the '040 CRYPTON mark") in connection with "liquid, odor and stain resistant, antimicrobial fabric for use in the manufacture of furniture, umbrellas, rain gear, tents, tarpaulins, awnings, clothing, aprons, upholstery, tablecloths, placemats, bedding, pet beds, curtains, bags, wall coverings, and covers for boats and vehicles" in International Classes 3 and 24. This registration issued March 19, 2013 and is incontestable, valid, subsisting, uncancelled, and unrevoked. A copy of the registration certificate is attached hereto as Exhibit C.

15. Crypton has continuously used the '040 CRYPTON mark in the United States to distinguish its goods in connection with liquid, odor and stain resistant, antimicrobial fabric for use in the manufacture of furniture, umbrellas, rain gear,

4

tents, tarpaulins, awnings, clothing, aprons, upholstery, tablecloths, placemats, bedding, pet beds, curtains, bags, wall coverings, and covers for boats and vehicles since at least as early as 2011.

16. The '329, '354, and '040 registrations constitute prima facie evidence of the validity of Crypton's trademarks and registrations. The '329, '354, and '040 registrations are also *prima facie* evidence of Crypton's ownership of, and exclusive right to, the marks described therein in commerce, and further provide constructive notice of Crypton's rights. The '329, '354, and '040 registrations are referred to herein collectively as the "CRYPTON Trademarks."

17. Crypton has used and continues to use the CRYPTON Trademarks in interstate commerce.

18. The CRYPTON Trademarks are well-known, strong, and represent considerable goodwill to Crypton. The substantial business goodwill of Crypton symbolized in the CRYPTON Trademarks has been obtained by long and continuous use of the marks and through investment of substantial business resources.

### IV.  CONDUCT GIVING RISE TO THIS ACTION

19. In 2015, Crypton and Valdese Weavers, Inc. ("Valdese") entered into a Supply Agreement in which Crypton supplies its treatment chemistry to Valdese and Valdese treats fabric with Crypton's treatment chemistry.

20. Under the Supply Agreement, Valdese sold WS fabric treated with Crypton chemistry and WS used the Crypton treated fabric on Pottery Barn furniture.

21. In 2022, Crypton announced that it is was switching to a new and improved treatment chemistry that did not include per- and polyfluoroalkyl substances ("PFAS") chemicals.

22. After the announcement, WS directed Valdese to stop treating Pottery Barn fabric with the Crypton chemistry. Instead, WS directed Valdese to treat Pottery Barn fabric with an inferior third-party treatment chemistry. However, WS continued using the CRYPTON Trademarks in connection with the sale of Pottery Barn furniture with treated fabric even though the fabric was not treated with Crypton chemistry.

23. Pottery Barn's treated fabric and furniture have not included Crypton's chemistry since at least as early as August 2022.

24. WS has been using the CRYPTON Trademarks without Crypton's authorization since at least as early as August 2022.

25. Recently ordered Pottery Barn fabric samples describe that the treated fabrics are "[e]ngineered with Crypton® Home's superior performance technology for easy cleanup." These Pottery Barn samples are attached hereto as Exhibit D.

26. These Pottery Barn samples including the CRYPTON Trademarks are currently available at Pottery Barn stores.

27. During a recent visit to the Pottery Barn website in July 2024, Pottery Barn's website and an online chat through the Pottery Barn website demonstrates that Pottery Barn was selling furniture using the CRYPTON Trademarks across several Pottery Barn categories, including, without limitation, sofas, sectionals, chairs, bed frames, dining chairs, and bar stools. Screenshots from Pottery Barn's website including the CRYPTON Trademarks are attached hereto as Exhibit E.

28. Several trade articles reference and describe Pottery Barn's "Performance Everyday Linen by Crypton Home". During a recent visit to the Pottery Barn website on or around July 18, 2024, these articles were directly linked to Pottery Barn's website. Examples of such articles are provided below.

   a. AOL News, January 23, 2024, *The 14 Best Apartment Sectionals of 2024, Ranked By Our Editors*. This article has a reach of 20.4 million. This article is attached hereto as Exhibit F.

   b. Yahoo! Lifestyle, January 23, 2024, *The 14 Best Apartment Sectionals of 2024, Ranked By Our Editors*. This article has a reach of 9.1 million. Reference to this article is attached hereto as Exhibit G.

29. A Crypton product marketing sheet (Exhibit H) is current linked to the Pottery Barn website.

7

30. On July 18, 2024, Crypton sent a letter certified mail to WS regarding WS's unauthorized use of the CRYPTON Trademarks. (Exhibit I).  WS signed the certified mail receipt, evidencing its receipt of the letter.  WS has failed to send Crypton a substantive response to Crypton's July 18, 2024 letter.

31. WS has and continues to falsely claim without authorization that its Pottery Barn treatments and furniture products are authorized and/or associated with Crypton.

32. WS's actions have caused confusion in that there is a perception in the marketplace that Crypton somehow endorses the Pottery Barn products.  WS's actions have also confused purchasers into thinking that they are buying furniture treated by Crypton chemistry or otherwise authorized by Crypton.

33. Upon information and belief, WS continues to falsely claim without authorization that its products include Crypton's chemical treatments and are associated with Crypton through WS's use of the CRYPTON Trademarks in association with its Pottery Barn products.  WS's improper and unauthorized use of CRYPTON Trademarks has caused injury to Crypton.

34. WS's unauthorized use in commerce of the CRYPTON Trademarks on reproductions, counterfeits, copies, or colorable imitations of the CRYPTON Trademarks in connection with the sale, offering for sale, distribution, and advertising of goods and services identical or similar to those covered by the '329,

8

'354, and '040 registrations is likely to cause confusion, or to cause mistake, or to deceive.

35. WS's use of the CRYPTON Trademarks has been committed with knowledge that such imitations are intended to cause confusion, or to cause mistake, or to deceive.

36. WS's unauthorized use of the CRYPTON Trademarks constitutes false designation of origin, false or misleading description of fact, and false and misleading representations of fact, which (A) are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of WS with Crypton, or as to the origin, sponsorship, or approval of WS and their products by Crypton; and (B) in commercial advertising and promotion of WS's products, misrepresent the nature, characteristics, qualities, or geographic origin of WS and its products.

37. WS's unauthorized uses of the CRYPTON Trademarks are infringements of Crypton's marks.

38. WS's conduct constitutes trademark infringement under the Lanham Act and the laws of the State of Michigan.

39. WS's conduct constitutes unfair competition under the Lanham Act and the laws of the State of Michigan.

9

40. WS's conduct constitutes tortious interference with business expectations.

41. Crypton has been injured, pecuniarily and in its business reputation, by the conduct of WS.

42. Crypton's injury is irreparable and not remediable by money damages alone.

## V. COUNT ONE
## FEDERAL TRADEMARK INFRINGEMENT

43. Crypton realleges the preceding paragraphs as if fully set forth herein.

44. WS's unauthorized uses of the CRYPTON Trademarks, as alleged hereinabove, constitute trademark infringement in violation of Lanham Act § 32, 15 U.S.C. § 1114.

45. WS is liable to Crypton for these violations of Lanham Act § 32, 15 U.S.C. § 1114.

46. WS's acts have been willfully committed with knowledge that such conduct is intended to cause either confusion or mistake or to deceive customers in the marketplace.

47. As a direct and proximate result of WS's conduct, Crypton has suffered damages to the valuable CRYPTON Trademarks, and other damages in an amount to be proved at trial.

## VI.   COUNT TWO
## VIOLATIONS OF THE LANHAM ACT § 43(a)

48. Crypton realleges the preceding paragraphs as if fully set forth herein.

49. The unauthorized uses of the CRYPTON Trademarks, as alleged hereinabove, constitute violations of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

50. WS is liable to Crypton for such violations of Lanham Act § 43(a), 15 U.S.C. § 1125(a).

51. WS's acts have been committed with knowledge that such conduct is intended to cause either confusion or mistake or to deceive distributors and customers in the marketplace.

52. As a direct and proximate result of WS's conduct, Crypton has suffered damages in an amount to be proved at trial.

## VII.   COUNT THREE
## TRADEMARK INFRINGEMENT UNDER MCL § 429.42

53. Crypton realleges the preceding paragraphs as if fully set forth herein.

54. The unauthorized uses of the CRYPTON Trademarks, as alleged hereinabove, constitute trademark infringement in violation of MCL § 429.42.

55. WS is liable to Crypton for trademark infringement under MCL § 429.42.

56. As a direct and proximate result of WS's conduct, Crypton has suffered damages to the valuable CRYPTON Trademarks, and other damages in an amount to be proved at trial.

## VIII.   COUNT FOUR
## TRADEMARK INFRINGEMENT UNDER MICHIGAN COMMON LAW

57. Crypton realleges the preceding paragraphs as if fully set forth herein.

58. The unauthorized uses of the CRYPTON Trademarks, as alleged hereinabove, constitute trademark infringement under the common law of Michigan.

59. WS is liable to Crypton for trademark infringement under the common law of Michigan.

60. As a direct and proximate result of WS's conduct, Crypton has suffered damages to the valuable CRYPTON Trademarks, and other damages in an amount to be proved at trial.

## IX.   COUNT FIVE
## UNFAIR COMPETITION UNDER MICHIGAN COMMON LAW

61. Crypton realleges the preceding paragraphs as if fully set forth herein.

62. On the basis of the foregoing allegations regarding WS's conduct, WS has committed unfair competition under the common law of Michigan.

63. WS is liable to Crypton for unfair competition under the common law of Michigan.

64. As a direct and proximate result of WS's conduct, Crypton has suffered damages in an amount to be proved at trial.

## X.     COUNT SIX
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

65. Crypton realleges the preceding paragraphs as if fully set forth herein.

66. Crypton has had valid business relationships and/or expectancies with a significant number of customers and retailers in a multitude of industries, including, furniture, hotels, hospitals, restaurants, and residential sales, with respect to the sales of Crypton's products and other products authorized by, or otherwise associated with, Crypton.

67. WS knew of these relationships and/or expectancies.

68. WS intentionally and improperly interfered with, and induced or caused a breach or disruption of, Crypton's business relationships and/or expectancies.

69. Crypton's business relationships and/or expectancies have been disrupted as a direct and proximate result of WS's activities, resulting in damage to Crypton.

## XI.     COUNT VII
## VIOLATION OF THE MICHIGAN
## CONSUMER PROTECTION ACT ("MCPA")

70. Crypton realleges the preceding paragraphs as if fully set forth herein.

71. WS's unauthorized use of the CRYPTON Trademarks to sell Pottery Barn treated fabric and furniture constitutes "trade or commerce" within the meaning of § 445.902(1)(g) of the MCPA, MCL § 445.901, et seq.

72. WS's actions as set forth above have and are causing confusion or misunderstanding as to the source, sponsorship, approval and/or certification of goods or services within the meaning of the MCPA. MCL § 445.903(1)(a).

73. Crypton has suffered irreparable harm as a direct and proximate result of WS's actions.

74. An award of monetary damages alone cannot fully compensate Crypton for its injuries, and Crypton lacks an adequate remedy at law.

## XII.   PRAYER FOR RELIEF

**WHEREFORE**, Crypton prays that this Court enter a judgment against WS and in favor of Crypton on its claims as follows:

A. A determination that WS is liable to Crypton for federal trademark infringement under 15 U.S.C. § 1114;

B. A determination that WS is liable to Crypton for violations of the Lanham Act § 43(a), 15 U.S.C. § 1125(a);

C. A determination that WS is liable to Crypton for trademark infringement under MCL § 429.42;

D. A determination that WS is liable to Crypton for trademark infringement under the common law of Michigan;

E. A determination that WS is liable to Crypton for unfair competition under the common law of Michigan;

F. A determination that WS is liable to Crypton for tortious interference with business relationships;

G. A determination that WS is liable to Crypton for violations of the MCPA;

H. A determination that WS's conduct has been willful and deliberate, with respect to federal trademark infringement, violations of the Lanham Act § 43(a), trademark infringement under MCL § 429.42, and common law trademark infringement, unfair competition, tortious interference with business relationships, and violations of the MCPA;

I. A determination that this case is "exceptional" in the sense of 15 U.S.C. § 1117(a) and an award of reasonable attorneys' fees to Crypton;

J. Under all claims for relief, that an injunction be temporarily, preliminarily, and permanently issued enjoining WS, its employees, agents, subsidiaries, affiliates, successors and assigns, and all those in active concert and participation with WS, and each of them who receives notice directly or otherwise of such injunctions, from:

(1) directly or indirectly using the CRYPTON Trademarks, or any other mark, word, or name similar to Crypton's marks which is likely to cause confusion, mistake, or to deceive;

(2) imitating, copying, or making any unauthorized use of the CRYPTON Trademarks;

(3) importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of the CRYPTON Trademarks;

(4) using any simulation, reproduction, counterfeit, copy or colorable imitation of the CRYPTON Trademarks in connection with the promotion, advertisement, display, sale, offer for sale, manufacture, production, circulation or distribution of any product or service;

(5) using any false designation of origin or false description (including, without limitation, any letters, symbols, or designs constituting the CRYPTON Trademarks) or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or

16

        sold by WS is in any manner associated or connected with Crypton or the CRYPTON Trademarks, or is sold, manufactured, licensed, sponsored, approved or authorized by Crypton;

K. An Order directing that WS deliver for destruction all products, labels, samples, prints, packages, wrappers, and advertisements in the possession of WS bearing any trademark belonging to Crypton, including the specific CRYPTON Trademarks set forth herein, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, shall be delivered up and destroyed, pursuant to 15 U.S.C. § 1118;

L. An Order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold, or otherwise circulated or promoted by WS are authorized by Crypton or related in any way to the CRYPTON Trademarks;

M. An Order directing WS and its employees, agents, subsidiaries, affiliates, successors and assigns, and all those in active concert and participation with WS, to file with this Court, and serve upon Crypton's counsel within thirty (30) days after entry of such judgment, a written

report under oath, setting forth in detail the manner and form in which WS has complied with such judgment;

N. An Order permitting Crypton, and/or auditors of Crypton, to audit and inspect the books, records, and premises of WS and related entities for a period of six (6) months after entry of final relief in this matter, to determine the scope of WS's past use of Crypton's intellectual property, including all promotion, distribution, and sales of products using the CRYPTON Trademarks, as well as WS's compliance with the orders of this Court;

O. An Order requiring WS to file with this Court, and provide to Crypton, an accounting of all sales and profits realized by WS through the use of the CRYPTON Trademarks or colorable imitations thereof;

P. An Order requiring WS to notify in writing every customer that purchased Pottery Barn furniture sold, advertised or marketed by WS to include a Crypton treatment where it in fact did not include a Crypton treatment and offering a full refund to every such customer;

Q. An award of damages adequate to compensate Crypton for the actionable conduct of WS, including—subject to the principles of equity—recovery by Crypton of (1) WS's profits, (2) any damages sustained by Crypton, (3) money damages to Crypton to conduct

  corrective advertising, and (4) the costs of this action in accordance with 15 U.S.C. § 1117(a);

R. An award of treble damages due to WS's willful and deliberate actionable conduct in accordance with 15 U.S.C. § 1117(a);

S. An award of interest, including pre-judgment interest on the foregoing sums; and

T. A grant of such other, different, and additional relief as the Court deems equitable and proper.

### XIII. <u>JURY DEMAND</u>

Plaintiff Crypton hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

Dated:  August 21, 2024

 /s/ Matthew M. Jakubowski
Matthew M. Jakubowski (P63194)
Mark A. Cantor (P32661)
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
(248) 358-4400 / Fax: (248) 358-3351
Email: mjakubowski@brookskushman.com
   mcantor@brookskushman.com

*Attorneys for Plaintiff*

19